**BOKHOUR LAW GROUP**
Mehrdad Bokhour, Esq. (SBN 285256)
mehrdad@bokhourlaw.com
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Telephone: (310) 975-1493
Facsimile: (310) 300-1705

**MELMED LAW GROUP P.C.**
Jonathan Melmed (SBN 290218)
jm@melmedlaw.com
1801 Century Park East, Suite 850
Los Angeles, California 90067
Phone: (310) 824-3828
Fax: (310) 862-6851

**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann, Esq. (SBN 229832)
cja@ackermanntilajef.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

Attorneys for Plaintiff Carmen Lepe

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CARMEN LEPE, on behalf of herself and all others similarly situated,

Plaintiff,

v.

XPO LOGISTICS SUPPLY CHAIN, INC., a North Carolina corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No.: 5:19-CV-02213-JGB-SHK

**Request and [Proposed] Order for Dismissal Pursuant to Federal Rules of Civil Procedure 41(a)**

## REQUEST FOR DISMISSAL

## I. INTRODUCTION

The parties, acting through counsel, have agreed to a partial settlement of the above-captioned matter. Specifically, the parties have settled Plaintiff Carmen Lepe's ("Plaintiff") individual claims in a Settlement and General Release Agreement, attached as **Exhibit A** ("Settlement Agreement"). Pursuant to paragraph 3 of the Settlement Agreement, Plaintiff respectfully requests dismissal of this entire action on the terms explained below. The dismissal is requested pursuant to rule 41(a) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

XPO Logistics Supply Chain, Inc. ("Defendant") is a provider of logistics support services such as manufacturing support, warehousing, distribution, direct-to-consumer processing, and reverse logistics and repair. XPO Logistics Supply serves customers in California and the United States and is a subsidiary of XPO Logistics, Inc., a large publicly-traded company. Plaintiff worked at Defendant's facility in Redlands, California as an hourly, nonexempt employee.

This action began when, on or about August 7, 2019, Plaintiff gave written notice by online filing a letter with the California Labor & Workforce Development Agency pursuant to the California Private Attorneys General Act ("PAGA"). Cal. Lab. Code, §§ 2698–2699.6.

On or about October 9, 2019, Plaintiff filed a class action and PAGA representative action complaint in the Superior Court of the State of California for the County of San Bernardino (case number CIVDS1930360) seeking damages on behalf of: herself; the State of California, as private attorney general; and on behalf of all others similarly situated, as putative class members. The complaint alleged that Defendant failed to pay overtime compensation, failed to provide off-duty meal periods, failed to maintain and provide accurate and itemized wage statements, failed to pay all wages in a timely manner and upon separation, and in doing so had violated

California Unfair Competition Law. Cal. Lab. Code, §§ 201–204, 210, 226, 226.3, 226.7, 510, 512, 1174, 1174.5, 1194, 1198, 1199; Cal. Bus. & Prof. Code, §§ 17200–17210; Cal. Code Regs. tit. 8, § 11090. The complaint also sought penalties for those violations pursuant to PAGA. Cal. Lab. Code, §§ 2698–2699.6.

On or about November 15, 2019, Defendant filed a notice of removal of the civil action, bringing the instant action before this court.

On or about May 30, 2020, Defendant settled a similar class action in *Emerita Corado-Cortez v. XPO Logistics, Inc.* No. 5:19-cv-00670-AB-SHK (C.D. Cal.) (the "Corado-Cortez action"), as well as a similar PAGA action in *Emerita Corado-Cortez v. XPO Logistics, Inc.*, No. CIVDS1908821 (Cal. Super. Ct., San Bernardino Cnty.).

On or about July 16, 2020, the plaintiff in the *Corado-Cortez* action filed an amended complaint in the Central District of California, case number 5:19-cv-00670-AB-SHK, adding PAGA claims to the federal court action.

On or about July 29, 2020, Defendant filed a Joint Notice of Settlement in the *Corado-Cortez* action in United States District Court, Central District of California. In August 2020, the plaintiff in the *Corado-Cortez* action filed a motion for preliminary approval of class and PAGA settlement in court and the proposed settlement ("Corado-Cortez Settlement").

Plaintiff is a member of the proposed class and an aggrieved employee for PAGA purposes in the *Corado-Cortez* Settlement. Accordingly, the class and PAGA claims she previously asserted in this case will be released and discharged by the Central District's approval of the *Corado-Cortez* Settlement.

As a result, the parties to this action agreed to settle the instant matter as to Plaintiff's individual claims on behalf of Plaintiff in her individual capacity <u>only</u>. Because Plaintiff is not a party to the *Corado-Cortez* Settlement, and is no longer a prospective class or PAGA representative, and she seeks to dismiss the class and

PAGA claims (collectively, her "representative claims") alleged in this action without prejudice.

## III. <u>CONCLUSION</u>

Based on these facts, and pursuant to paragraph 3 the Settlement Agreement as well as rule 41(a) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests dismissal of this entire action as follows:

1. Plaintiff requests dismissal of her individual claims *with prejudice*;
2. Plaintiff requests dismissal of her representative claims *without prejudice*; and
3. All parties shall bear their own attorneys' fees and costs.

Because no class was certified in this matter, notice to the putative class is not required.

Dated: November 12, 2020

**MELMED LAW GROUP P.C.**

/s/Jonathan Melmed
JONATHAN MELMED
*Attorneys for Plaintiff Carmen Lepe, on behalf of herself and all others similarly situated*

**[PROPOSED] ORDER**

Plaintiff Carmen Lepe's request for dismissal is approved pursuant to rule 41(a) of the Federal Rules of Civil Procedure. The entire action is dismissed as follows:

1. Plaintiff Carmen Lepe's individual claims are hereby dismissed *with prejudice*;
2. Plaintiff's representative claims are hereby dismissed *without prejudice*; and
3. All parties to bear their own attorneys' fees and costs.

Because no class was certified in this matter, no notice to the putative class is ordered.

Dated: ____________________

____________________________________
Hon. Terry J. Hatter Jr.

# <u>Exhibit A</u>

*(Settlement and General Release Agreement)*

DocuSign Envelope ID: 539247A9-8370-4D19-8937-D686B088273D

# SETTLEMENT AND GENERAL RELEASE AGREEMENT

This Settlement and General Release Agreement ("Agreement") is made by and between Carmen Lepe ("Plaintiff"), on the one hand, and XPO Logistics Supply Chain, Inc. ("Company"), on the other. Plaintiff and Company will at times be referred to collectively as the "Parties."

## RECITALS

A. In 2019, Plaintiff filed a letter pursuant to Labor Code sections 2698, et seq., the Private Attorneys General Act of 2004 ("PAGA"), with the California Labor and Workforce Development Agency alleging the Company violated various sections of the Labor Code, including sections 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1198, and 1199, and the applicable Wage Order by allegedly failing to provide Plaintiff and all other aggrieved employees all wages for hours worked, failure to pay overtime wages, failure to authorize and permit rest periods or premium wages in lieu thereof, failure to provide meal periods or premium wages in lieu thereof, failure to timely pay wages and timely pay wages upon termination, and failure to provide accurate itemized wage statements ("PAGA Letter").

B. On or about October 9, 2019 Plaintiff filed a Class Action and PAGA Complaint in the Superior Court of California, County of San Bernardino ("Court"), Case No. CIVDS1930360, against the Company alleging six causes of action for: (1) Failure to Pay Overtime Compensation; (2) Failure to Provide Off-Duty Meal Periods and/or Pay Missed Meal Period Premiums; (3) Failure to Maintain and Provide Accurate and Itemized Wage Statements; (4) Failure to Pay all Wages Owed in a Timely Manner and Upon Separation of Employment; (5) Unfair Competition; (6) Penalties Pursuant to the Private Attorneys General Act of 2004, Labor Code § 2698 et seq. (the "Action").

C. On or about November 22, 2019, the Company successfully removed the Action to the United States District Court Central District of California, Case No. 5:19-cv-02213-JGB-SHK.

D. On or about May 30, 2020, the Company settled a similar class action titled *Emerita Corado-Cortez et al., v. XPO Logistics, Inc. et al.*, Central District of California, Case No. 5:19-cv-00670-AB-SHK and PAGA action bearing the same name, Superior Court of California, County of San Bernardino, Case No. CIVDS1908821 ("Corado Action"). On or about July 16, 2020, Corado filed an amended complaint in the Central District of California, Case No. 5:19-cv-00670-AB-SHK, adding PAGA claims to the federal court action. On or about July 29, 2020, the Company filed a Joint Notice of Settlement for the Corado Action in United States District Court Central District of California. In August 2020, Corado filed a motion for preliminary approval of class and PAGA settlement in court and the proposed settlement ("Settlement"). Plaintiff acknowledges and agrees that she is a member of the proposed settlement class in the Corado



Plaintiff's Initials CL
**CONFIDENTIAL**

Action, and that the PAGA claims she asserted in the Action will be released and discharged by the Central District's-approved settlement in the Corado Action.

E. The Parties engaged in informal settlement discussions and have agreed to settle Plaintiff's individual claims as set forth in this Agreement.

F. Company specifically denies Plaintiff's claims and denies it committed any wrongdoing whatsoever.

G. The Parties now desire to settle all of Plaintiff's actual or potential Claims arising out of her employment with Company, including those that are now alleged, or could have been alleged, as well as any other known or unknown claims that did arise, or could have arisen, between the Parties to date.

NOW, THEREFORE, to avoid the substantial expense and inconvenience of possible litigation and in consideration of the promises and agreements set forth below, the Parties agree as follows:

1. **Settlement Payment**. Within 21 calendar days after the Effective Date as defined in Paragraph 4, Company will pay or cause to be paid to Plaintiff a total settlement amount of Ten Thousand and No Cents ($10,000.00) in two checks (the "Settlement Payments"), as set forth below.

1.1 A check made payable to Carmen Lepe for $2,000 less all withholdings as required by law, for all alleged lost wages, back pay, or front pay. Company will issue an IRS Form W-2 to Plaintiff reflecting this payment.

1.2 A check made payable to Carmen Lepe for $8,000, for all alleged penalties, damages, nonpecuniary losses, and interest. This sum shall be paid without any deduction for taxes and Company will issue an IRS Form 1099 to Plaintiff reflecting this payment. Plaintiff shall promptly provide Company with an executed W-9 reflecting the tax identification numbers.

1.3 Plaintiff understands and acknowledges that she or her counsel shall not be entitled to any payments or benefits from Company other than those expressly set forth in Paragraphs 1.1 and 1.2 above.

1.4 The Settlement Payments shall be sent to Melmed Law Group, P.C. located at 1801 Century Park East, Los Angeles, California 90067, attention Jonathan Melmed.

1.5 To be entitled to this Settlement Payment, all of the following preconditions ("Preconditions") must have occurred: (i) Plaintiff properly and fully executes this Agreement; (ii) Plaintiff's counsel submits appropriate and complete W-9 forms; and (iii) Plaintiff dismisses her claims in accordance with Paragraph 3 of this Agreement.

2. **Taxability.** Plaintiff agrees that Company has not made any representation on the taxability of the Settlement Payment, including whether Section 162(q) of the Tax Cuts and Jobs Act of 2017 is applicable to this Agreement. Plaintiff agrees to consult her own counsel and tax accountant



DocuSign Envelope ID: 539247A9-8370-4D19-8937-D686B088273D

regarding same, should she so choose. Plaintiff further acknowledges that the Settlement Payment outlined above is a gross sum, portions of which may be subject to all required tax withholdings and deductions (i.e., federal, state, Social Security, and Medicare taxes). Plaintiff agrees to pay any federal or state taxes remaining due and agrees to indemnify and hold Company harmless for any tax liability whatsoever aside from Company's legal obligation to withhold taxes from the payment amount.

3. **Dismissal.** Within five (5) calendar days of the Effective Date of this Agreement, Plaintiff, through her counsel, will file with the Court a request to dismiss her individual claims with prejudice, and her class and PAGA claims without prejudice, which shall result in a complete dismissal of all claims and causes of action in the Action.

4. **Effective Date.** This Agreement shall be effective seven (7) days after the mutual execution by Plaintiff and Company ("Effective Date"), and receipt by Company of appropriate and complete W-9 Forms from Plaintiff and/or her counsel.

5. **Older Workers' Benefits Protection Act.** It is the intention of the Parties that the releases contained in this Agreement apply to all claims of any kind against the Released Parties. In order to comply with the Older Workers' Benefits Protection Act (29 U.S.C. § 626, subd. (f)) and effectuate the release by Plaintiff of any potential claims under the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (ADEA), Plaintiff expressly acknowledges and agrees to the following.

5.1 She has been offered a full twenty-one (21) days within which to consider this Agreement before executing it;

5.2 She has carefully read and fully understands all of the provisions of this Agreement;

5.3 She is, through this Agreement, releasing the Released Parties and their respective present and former officers, directors, employees, and agents, and parent and other affiliated or former companies, attorneys, insurers, administrators, successors, assigns, and all other related persons from any and all claims she may have against them, including but not limited to, any and all age discrimination claims under the ADEA;

5.4 She knowingly and voluntarily agrees to all of the terms set forth in this Agreement;

5.5 The consideration given for waiver and release of any potential age discrimination claims under the ADEA is in additional to any consideration which Plaintiff was already entitled to receive;

5.6 She was advised and hereby is advised in writing to consider the terms of this Agreement and consult with an attorney of her choice prior to executing this Agreement;

5.7 She has a full seven (7) days following the execution of this Agreement to revoke this Agreement. Any revocation of this Agreement must be made in writing and delivered to Ogletree, Deakins, Nash, Smoak & Stewart, P.C. at 4370 Executive Drive, Suite 990, San Diego, California 92122, Attention: Tim Johnson and Jesse Ferrantella, within the seven (7) day period;



Plaintiff's Initials CL

**CONFIDENTIAL**

DocuSign Envelope ID: 539247A9-8370-4D19-8937-D686B088273D

5.8 She has been advised, and hereby is advised, that this Agreement shall not become effective or enforceable until (1) all preconditions set forth above are met and (2) the date the seven (7) day revocation period has expired; and

5.9 She understands that rights or claims under the ADEA that may arise after the date this Agreement is executed are not waived.

6. **General Release**.

6.1 In consideration for the Settlement Payment and the benefit of this Agreement, Plaintiff and her heirs, executors, agents, administrators, successors or assigns unconditionally, irrevocably, and absolutely release and discharge Company, and its parents, subsidiaries, divisions, and affiliates, former entities, and each of its respective present and former owners, officers, directors, employees, agents, representatives, attorneys, insurers, administrators, predecessors, successors, assigns, and all other related persons, firms, and associations of the aforementioned business entities ("Released Parties"), from all losses, liabilities, claims, charges, demands and causes of action, known or unknown, suspected or unsuspected, arising directly or indirectly out of or in any way connected with the transactions and occurrences between the Parties, including Plaintiff's employment with Company ("Claims"). Without limiting in any way the foregoing general release, this release specifically includes the following:

(a) all Claims that were or could have been asserted by Plaintiff in the Action;

(b) all Claims that relate in any way to Plaintiff's employment with Company, the terms and conditions of Plaintiff's employment with Company, the cessation of Plaintiff's employment with Company, and any actions and/or omissions after the cessation of Plaintiff's employment with Company prior to the Effective Date of this Agreement;

(c) all Claims asserted by any other employee of Company in which Plaintiff has claimed or could claim any interest;

(d) all Claims, whether in tort, contract, by statute, or on any other basis, whether in law or in equity, whether civil, criminal, or administrative, whether known or unknown, for damages or monies owed by Company or Released Parties, including compensatory damages, emotional distress damages, pain and suffering, physical injury damages, punitive damages, liquidated damages, attorneys' fees, costs, and interest, including all claims for back pay, front pay, overtime pay, severance pay, notice pay, health benefits, disability benefits, retirement benefits, all other benefits, vacation pay, holiday pay, sick pay, commissions, bonuses, relocation expenses, loans, expense reimbursements, or benefits due under any collective bargaining agreement;

(e) all rights and Claims under the following laws, as amended, to the maximum extent permitted by law: the Age Discrimination in Employment Act; Section 1981 of the Civil Rights Act of 1866; Title VII of the Civil Rights Act; the Americans with Disabilities Act; the Federal Family and Medical Leave Act; the Worker Adjustment and Retraining Notification Act; the National Labor Relations Act; the Labor Management Relations Act; the Fair Credit Reporting Act; the Employee Retirement Income Security Act of 1974; the Age

DocuSign Envelope ID: 539247A9-8370-4D19-8937-D686B088273D

Discrimination and Employment Act; the Genetic Information Nondiscrimination Act of 2008; the Health Insurance Portability and Accountability Act; the Occupational and Safety Health Act; the Equal Pay Act; the Fair Labor Standards Act, the Uniformed Services Employment and Re-employment Act; Executive Orders 11246 and 11141; except as otherwise excluded below, the False Claims Act; the Consolidated Omnibus Budget Reconciliation Act of 1986; the Rehabilitation Act of 1973; the Electronic Communications Privacy Act of 1986 (including the Stored Communications Act).

(f) all rights and Claims under the following state and local laws, as amended, to the maximum extent permitted by law: the California Fair Employment and Housing Act, Cal. Gov. Code § 12940 et seq., or any other applicable local law; the California Constitution; the California Labor Code; the California Family Rights Act and Family Medical Leave Act; the California Whistleblower Protection Act; the California Wage Theft Prevention Act; the California Wage Payment Act; the California Business & Professions Code § 17200 et seq.; and California False Claims Act.

(g) to the maximum extent permitted by law, all rights and Claims under any other federal, state or local law, regulation or ordinance, including for employment discrimination on any basis, hostile working environment, retaliation, workplace safety, wrongful discharge, retaliatory discharge, constructive discharge, unsafe working conditions, breach of express or implied contract, breach of collective bargaining agreement, breach of implied covenant of good faith and fair dealing, detrimental reliance, promissory estoppel, defamation, false light negligence, negligent or intentional misrepresentation, invasion of privacy, interference with economic gain or contractual relations, and intentional and negligent infliction of emotional distress.

6.2 As a condition of this Agreement, Plaintiff will dismiss her class and PAGA claims without prejudice. Except as may be necessary to enforce this Agreement, or to seek a judicial determination of the validity of the waiver of claims, and to the fullest extent permitted by law, Plaintiff agrees not to permit, authorize, initiate, encourage, support, join or continue any lawsuit, administrative charges or complaints (including charges of discrimination), arbitrations or proceedings ("Proceedings") against Company or any of the Released Parties based in whole or in part on any Claim covered by this Agreement. Plaintiff acknowledges and agrees that, included among the claims released are any and all claims that have been, or may be, asserted by her or by any other person or entity on her behalf in any class, collective, or representative action relating to the Released Parties including, but not limited to, the Company. Plaintiff agrees that, for any resolution of any currently pending or future class, collective, or representative action against the Company under which remuneration may be distributed to members of the representative class (including the Corado Action), the Company has express authorization, through this Agreement, to exclude Plaintiff from the list of eligible members of the representative class such that Plaintiff shall not receive any such distribution under the resolution of said currently pending or future class, collective, or representative action against the Company, except for Plaintiff's portion of any PAGA penalty payments in the Corado Action, which she will receive in exchange for the release of such PAGA claims as set forth in the Settlement in the Corado Action and will be sent directly to Plaintiff by the administrator. Plaintiff also expressly authorizes the Company to exclude Plaintiff from the list of those who will receive notice of currently pending or future class,



DocuSign Envelope ID: 539247A9-8370-4D19-8937-D686B088273D

collective, or representative actions against the Company (including the Corado Action), and while Plaintiff agrees that she need not receive notice of the Corado Action through the settlement administrator for this release to be valid, she will be provided a copy of such notice through her counsel named in this Agreement and eligible for her portion of any PAGA penalty payments in the Corado Action, which she will receive in exchange for the release of such PAGA claims as set forth in the Settlement in the Corado Action. Plaintiff waives any right to become, and promises not to consent to become, a member of any class in any case in which claims are asserted against the Released Parties and that involve events which have occurred as of the date Plaintiff signs this Agreement. Apart from receiving her share of any PAGA penalty payments in the Corado Action in exchange for the release of such PAGA claims as set forth in the Settlement in the Corado Action, Plaintiff further waives any right to pursue representative PAGA claims on behalf of herself, the State of California, the LWDA and other allegedly aggrieved employees. Plaintiff understands and agrees that, if a claim or action is prosecuted in her name before any court or administrative agency, she waives the right to, and agrees not to take, any award of money or other damages or relief from such action. Plaintiff also agrees that, if a claim or action is prosecuted in her name, she will immediately request, in writing, that the claim or action on her behalf be withdrawn.

6.3 Notwithstanding the foregoing, the Parties agree and acknowledge that nothing in this Agreement releases or waives any rights or claims the Parties have or may have regarding: (i) Plaintiff's benefits under applicable workers' compensation and/or unemployment insurance; (ii) those which, by law, cannot be waived by signing this Agreement; or (iii) to enforce this Agreement.

6.4 Plaintiff acknowledges she may discover facts or law different from, or besides, the facts or law she knows or believes to be true regarding the claims released in this Agreement and agree nonetheless this Agreement, and the General Release contained in it, will be and remain effective in all respects, notwithstanding such different or additional facts or the discovery of them.

6.5 Except as provided above, the Parties declare and represent they intend this Agreement to be complete and not subject to any claim of mistake or duress. Plaintiff executes this General Release knowing the release covers all possible claims to the fullest extent permitted by law, except the specifically excluded claims described above or claims based on an alleged breach of this Agreement.

7. **<u>Waiver of California Civil Code Section 1542</u>**. Plaintiff acknowledges and agrees that it is her intention that this Agreement shall be effective as a full and final accord and satisfaction and settlement of, and as a bar to, each and every claim, demand, action, contract, covenant, cause of action, obligation, debt, controversy, promise, agreement, liability, cost, expense, and lien, as referred to and released above, that she has or may have against Company and Released Parties. In connection with such waiver and relinquishment, Plaintiff acknowledges that she is aware that she may, after the signing of this Agreement, discover facts different from or in addition to the facts that she knows or believes to be true with respect to the subject matter of the Claims and this Agreement, but that it is her intention to (as described above) fully, finally, absolutely and forever settle any and all such claims, disputes and differences that do now exist or previously have existed. In furtherance of this intention, Plaintiff expressly, knowingly and voluntarily waives any and all



DocuSign Envelope ID: 539247A9-8370-4D19-8937-D686B088273D

rights and benefits conferred upon her by California Civil Code section 1542, which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiff knowingly abandons, releases, waives and relinquishes all rights and benefits that she may acquire under California Civil Code section 1542 pertaining to the subject matter of the Claims and this Agreement. She further acknowledges that this waiver of the provisions of section 1542 was separately bargained for and is an essential and material term of this Agreement.

8. **Warranty of No Pending Claims**. Plaintiff warrants and represents that apart from the PAGA letter in this Action, she has contacted no governmental agency for the purpose of initiating another claim against Company or Released Parties or reporting potential legal violations by Company or Released Parties.

9. **No Admissions**. In entering into this Agreement, Company or Released Parties make no admission they have engaged, or are now engaging, in any unlawful conduct. Company and Released Parties dispute that any unlawful conduct occurred. The settlement is not an admission of liability, but is a compromise of disputed claims that remain untested. It is understood that there has been no trial or adjudication of any issue of fact or law relating to Plaintiff's claims, and that Company wants to avoid further time and expense by entering into this Agreement.

10. **Non-Disparagement**. Plaintiff agrees that she will not make any statement to any person or entity that is disparaging of the business, reputation, competence or good character of Company or Released Parties or that, if publicized, may cause humiliation, embarrassment or otherwise tend to injure the business of Company or Released Parties or encourage any entity or person to refrain from or cease doing business with any of them.

11. **Confidentiality**.

11.1 In consideration for the promises set forth in this Agreement, Plaintiff and her counsel agree that the facts, terms and conditions of this Agreement shall remain strictly confidential and that Plaintiff and her counsel shall not disclose, disseminate, or publicize the terms and conditions of this Agreement, including without limitation, disclosure to current or past employees of Company or current or former customers or prospective customers of Company, except, as necessary, (i) to an accountant, financial advisor, or tax return preparer and/or taxing agencies; (ii) to legal counsel, (iii) to Plaintiff's spouse or common law partner, (iv) as required by law; and/or (v) in response to an order of a court of competent jurisdiction or governmental or regulatory agency in response to a subpoena and/or government request issued under proper lawful authority. If Plaintiff or her counsel are legally required to disclose any such information, or if Plaintiff or her counsel disclose any such terms of the Agreement to an accountant, financial or



DocuSign Envelope ID: 539247A9-8370-4D19-8937-D686B088273D

tax advisor, or Plaintiff's spouse or common law partner, Plaintiff and/or her counsel will advise them that they must not disclose the terms of this Agreement to anyone else and will be responsible for any such disclosure. Plaintiff represents that she has kept the terms of this Agreement confidential and has not disclosed or divulged any of these terms to anyone, to date. All subsections in this Section of the Agreement shall be known as the "Confidentiality Provisions."

11.2 Except as otherwise stated in this Agreement, if Plaintiff is asked by a third party about the Action or any other disputes between the Parties, the material facts underlying the Action, or the resolution of the Action, Plaintiff shall respond only that the Action has have been resolved to the Parties' mutual satisfaction and that the terms are confidential, or words to that effect.

11.3 In the event that Plaintiff and/or her counsel is legally obligated by statutory or regulatory requirements to disclose a copy of this Agreement, any of the contents of this Agreement and/or the facts and circumstances thereof to any person other than to Plaintiff's spouse or common law partner, or to tax, financial, or legal representatives, the party compelled to make such disclosure shall immediately provide reasonable notice to Company in writing, prior to the date for disclosure, by sending an email to jesse.ferrantella@ogletree.com and tim.johnson@ogletree.com.

11.4 Plaintiff understands that the confidentiality provision contained in this Agreement is a material inducement for entering into this Agreement, for which Company has provided valuable consideration to Plaintiff.

11.5 In any proceeding to enforce the terms of this Agreement, the Parties may disclose the terms of this Agreement to the extent necessary to enforce the Agreement, but shall make all efforts to preserve the confidentiality of this Agreement, including but not limited to filing the relevant provisions of the Agreement and/or discussion of these terms under seal or conditionally under seal to the fullest extent possible.

11.6 Nothing herein is intended to be or will be construed to prevent Plaintiff from responding to any inquiry from, or providing truthful testimony and information to, any federal, State, or other regulatory authority in the course of an investigation or proceeding authorized by law and carried out by such agency.

12. **Neutral Employment Reference**. To the extent Plaintiff should ever seek to use Company as an employment reference, Plaintiff shall direct prospective employers seeking work verification and/or references to contact Company's Human Resources staff, which shall respond by providing only Plaintiff's dates of employment and positions held.

13. **No Waiver.** No waiver by any party of any breach of any term or provision of this Agreement shall be construed to be, nor be, a waiver of any preceding, concurrent or succeeding breach of that term or provision, or any other term or provision, of the Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.



Plaintiff's Initials DS CL ______

DocuSign Envelope ID: 539247A9-8370-4D19-8937-D686B088273D

14. **Severability**. Should it be determined by a court that any term of this Agreement is unenforceable, that term shall be deemed to be deleted. However, the validity and enforceability of the remaining terms shall not be affected by the deletion of the unenforceable term.

15. **Applicable Law and Venue**. The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of California. For purposes of jurisdiction and venue, this Agreement is entered into in Los Angeles, California, and any litigation arising out of this Agreement, including an action to enforce the Agreement, shall be brought in Los Angeles County. In the event of any controversy, claim, arbitration, or dispute relating to this Agreement, or the breach of it by any Party, the prevailing party shall be entitled to recover reasonable attorney fees and other costs incurred in that controversy, claim, arbitration, or dispute, besides any other relief to which the party may be entitled. As used in this section, the term “prevailing party” means the party to a lawsuit, arbitration, or other similar proceeding who successfully prosecutes the proceeding or successfully defends against it.

16. **Attorneys' Fees and Costs for the Action**. The Parties will bear their own attorneys’ fees, expert fees, costs and all other expenses in connection with this Action and/or this Agreement, beyond what has been agreed to herein.

17. **Binding on Successors**. The Parties agree that this Agreement shall be binding on, and inure to the benefit of, their successors, heirs and/or assigns.

18. **No Assignment**. The Parties warrant and represent that they have not assigned or transferred, to any person not a party to this Agreement, any released matter, or any right to any consideration provided in this Agreement. The Parties agree to defend, indemnify and hold each other harmless from any and all claims based on, in connection with, or arising out of any such assignment or transfer made, purported or claimed.

19. **Cooperation**. The Parties agree to do all things necessary and to execute all further documents necessary and appropriate to carry out and effectuate the terms and purposes of this Agreement. The Parties agree to execute such other, further, and different documents as reasonably may be required to effectuate this Agreement. Without limiting the generality of the foregoing, the Parties agree to execute the forms necessary to dismiss the lawsuit with prejudice, as provided in paragraph 3 of this Agreement.

20. **Authority to Sign Agreement**. Any individual signing this Agreement on behalf of an entity represents and warrants that he/she has full authority to do so.

21. **Consultation with Counsel and Voluntary Agreement.** The Parties, and each of them, acknowledge they consulted with legal counsel of their choice prior to execution and delivery of this Agreement. The Parties represent they signed this Agreement knowingly and voluntarily, after consulting with their attorneys, with a full understanding of all of its terms.

22. **Entire Agreement; Modification**. This Agreement contains the entire agreement between the Parties with respect to the subject matter described in this Agreement. It is agreed that there are no collateral agreements or representations, written or oral that are not contained in this Agreement. This Agreement may be amended only by a written instrument executed by the Parties.



Plaintiff’s Initials CL

23. **Construction of Agreement.** Counsel for the Parties have reviewed and participated in the drafting of this Agreement. Consequently, the normal rule of construction that ambiguities shall be resolved against the drafter shall not be applied in the interpretation of this Agreement.

24. **Retention of Jurisdiction to Enforce.** The Parties further agree that this settlement is enforceable pursuant to applicable federal law. Should this Action be dismissed prior to the performance in full of the terms of this Agreement, the Parties agree that the Court may retain jurisdiction over the Parties to enforce the settlement until performance in full of the terms of the settlement.

25. **Execution in Counterparts**. This Agreement may be executed in counterparts, and, if so executed, shall have the same force and effect it would have if the Parties executed a single original of this Agreement. Each counterpart signature page shall be considered to be an original, and all counterparts together shall constitute one instrument. Execution and delivery of this Agreement by sending a facsimile copy or emailing the signature page in PDF shall constitute a valid and binding execution and delivery of this Agreement by such party. Such facsimile copies or photocopies shall constitute enforceable original documents.

The Parties, with the benefit of representation and advice of counsel, have read this Agreement and fully understand each and every provision contained in it.

[*Signatures on Next Page*]

DocuSign Envelope ID: AF6702BF-FAF8-48A3-9AB6-1E6BC970E8C8

Dated: October ___, 2020 ______________________________________

Carmen Lepe, Plaintiff

10/7/2020

Dated: October ____, 2020

XPO Logistics Supply Chain, Inc., Defendant

DocuSigned by:

By: Ashfaque Chowdhury

CD8CC30437E94DC...

Print: Ashfaque Chowdhury

Title: President

**APPROVED AS TO FORM**

Dated: October ____, 2020 ______________________________________

Jonathan Melmed, Esq.
Melmed Law Group P.C.
Ackermann & Tilajef, P.C.
Bokhour Law Group, P.C.
Attorneys for Plaintiff

Dated: October _____, 2020 ______________________________________

Tim L. Johnson, Esq.
Jesse C. Ferrantella, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Attorneys for Defendant

44440093.1



Plaintiff's Initials _____

**CONFIDENTIAL**

DocuSign Envelope ID: 539247A9-8370-4D19-8937-D686B088273D

Dated: October 10/20/2020, 2020

DocuSigned by:
08D1282E193143F...

Carmen Lepe, Plaintiff

Dated: October 10/7/2020, 2020

XPO Logistics Supply Chain, Inc., Defendant

DocuSigned by:
By: Ashfaque Chowdhury
CD8CC30437E94DC...

Print: Ashfaque Chowdhury

Title: President

**APPROVED AS TO FORM**

Dated: October 20, 2020

Jonathan Melmed

Jonathan Melmed, Esq.
Melmed Law Group P.C.
Ackermann & Tilajef, P.C.
Bokhour Law Group, P.C.
Attorneys for Plaintiff

Dated: October 28, 2020

Tim L. Johnson, Esq.
Jesse C. Ferrantella, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Attorneys for Defendant

44440093.1